

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00065-CR
_____

CEDRIC CHARLES LISTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 278th District Court
Walker County, Texas
Trial Court No. 27141

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

On the evening of November 9, 2014, Cedric Charles Lister and Stanley Gorman were engaged in some competitive games of dominoes at a friend's apartment. As the evening wore on, Lister and Gorman decided to gamble at their game. After Gorman lost, a dispute arose over the amount of money he owed Lister. This dispute gradually escalated until Lister stabbed Gorman in his left arm. As a result, Lister was indicted for aggravated assault with a deadly weapon.[1] A Walker County jury[2] found Lister guilty, and after punishment was enhanced due to Lister's two prior felony convictions, the trial court sentenced him to forty years' imprisonment.[3]

On appeal, Lister challenges the sufficiency of the evidence to support the jury's finding that he used a deadly weapon while committing the assault. We find that the evidence was sufficient to support the jury's findings.

## I.       Sufficient Evidence Supports the Trial Court's Findings

### A.       Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield*

---

[1]*See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

[2]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]*See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2016).

*v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of a witnesses' [sic] testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by what the courts call a hypothetically correct jury charge measure. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

3

Under the statute and the indictment, to obtain a conviction, the State was required to prove beyond a reasonable doubt that on or about November 9, 2014, Lister (1) intentionally, knowingly, or recklessly (2) caused bodily injury (3) to Gorman (4) by stabbing Gorman in the arm and that (5) Lister used or exhibited a deadly weapon, to wit, a knife, in the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). A knife is not a deadly weapon *per se. See McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000). Therefore, it was the burden of the State to not only prove that a knife was used, but that "in the manner of its use or intended use[, it was] capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2016). Serious bodily injury is "bodily injury that creates a substantial risk of death . . . , serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2016). Lister only challenges the sufficiency of the evidence supporting the jury's finding that he used or exhibited a knife as a deadly weapon in the commission of the assault.

**B. Analysis**

In support of his point of error, Lister initially argues that since the State specifically pled the weapon used was a knife, it was required to prove beyond a reasonable doubt that a knife was used during the assault, citing *Gollihar v. State*, 46 S.W.3d 243, 250 (Tex. Crim. App. 2001). He asserts that there was insufficient evidence to show (1) that the weapon used was a knife and (2) that the weapon was used in such a manner that it was capable of causing death or serious bodily injury. The State does not contest that it was required to show that the weapon used was a knife, but argues that there was sufficient evidence for the jury to have concluded beyond a

4

reasonable doubt both that the weapon was a knife and that the knife was used as a deadly weapon. Even assuming that the State was required to show that the weapon used was a knife,[4] there was sufficient evidence for a rational jury to find that a knife was used in the assault in a manner capable of causing death or serious bodily injury.

At trial, Gorman testified that he and Lister were playing dominoes at an apartment belonging to his friend, Jackie Ross. Eventually, he and Lister gambled thirty dollars "straight up" on a game of dominoes. He also explained that an alternative way to bet on a game is a "peter roll," which required the losing party to pay the winner double his bet. After he lost the dominoes game to Lister, he went home to get extra money, returned to the apartment, and paid Lister thirty dollars. Lister then asked if he could talk to him outside, and when they went outside, Lister asked him if he was going to pay the additional thirty dollars that he alleged was due him. An argument ensued between the two, and Lister became violent, grabbing Gorman's shirt and coming down on his arm with an object that caused blood to spurt from him.

About that time, Lister's girlfriend came outside, and Gorman told her that Lister was stabbing him, all the while holding Lister at bay. Lister's girlfriend grabbed Lister, Gorman went inside the apartment, and upon seeing that the wound was deep, Gorman said that he needed to go to the hospital. Ross and her daughter took Gorman to the hospital, where his wound was treated and where he talked to police officers.

---

[4]We note that the trial court's jury charge instructed the jury that it was to determine whether the State proved beyond a reasonable doubt that, *inter alia*, "the defendant, during the alleged assault, used or exhibited a deadly weapon; to-wit: a knife."

Gorman testified that Lister stabbed him in his left arm and that he thought Lister used a pocket knife, but that he was not sure since he did not see it. He acknowledged that his medical records indicated that he told hospital personnel that he was stabbed with a pocket knife. Gorman testified that the wound took about three months to heal and that a scar remained, which was shown to the jury.

Dr. Joseph D'Addisio, an emergency room physician at Huntsville Memorial Hospital, testified that he supervised Gorman's treatment by physician's assistant Kimberly Shipper, but that he did not treat Gorman. He testified that Shipper took a history and performed an assessment that is reflected in the medical records, which were introduced into evidence. D'Addisio testified that the history shows that Gorman was stabbed with a pocket knife by a known person. He testified that the procedure was to document in the medical records what the patient says, so if he says knife, they put down knife.

The State also introduced photographs of the wound taken in the hospital before and after treatment. D'Addissio testified that he has been an emergency room physician for thirty-four years and has seen five to six stab wounds each month during that time. He testified that the photographs showed a wound that was caused by a very sharp object, either a scalpel, or a knife, or possibly a razor blade. He also testified that he believed it was caused by a knife since that is what the medical records history showed and the wound was consistent with a knife wound. He said that the wound was a puncture wound that penetrated through both the outer layer of skin and the inner layer of fat and exposed some muscles. He denied that it was a superficial wound, but characterized it as a fairly deep wound. D'Addissio opined that the object causing Gorman's

6

wound would have been capable of causing serious bodily injury or death if it had been used in the right location of the body.

Brandon Boyd, an officer with the Huntsville Police Department, testified that prior to working as a police officer, he had worked in the Huntsville emergency room and as an EMT. He has been a certified EMT for fourteen years. He testified that in his EMT training he studied types of wounds and that he had seen many stab wounds in ten years working as an EMT. Boyd testified that the photographs of Gorman's wound showed that he was stabbed in the left biceps with a very sharp object. He said that it was a pretty deep puncture and that Gorman told him in the hospital that it was caused by a pocket knife. Boyd opined that the wound was consistent with being stabbed with a pocket knife.

Boyd also opined that in the way the knife was used, it was capable of causing serious bodily injury or death. He explained that the brachial artery runs down the arm in this area and could have easily been cut. If it had, the person could bleed out and die within minutes if they were not able to stop the bleeding. He also pointed out that the wound was close to the chest cavity and could have punctured a lung if it had penetrated the chest.

On cross-examination, Boyd acknowledged that in his report, he stated that Gorman was extremely intoxicated when he saw him in the hospital. He also acknowledged that he did not know whether the object causing the wound was a knife and that it could have been scissors or glass. Boyd also testified that based on what he saw and what Gorman told him, he believed the object was a knife.

7

From this testimony, a rational jury could conclude that Lister stabbed Gorman with a knife. Although Gorman claimed at trial that he did not see what stabbed him and did not know what it was, he also testified that he still thought it was a pocket knife. Further, the jury, as sole judge of the credibility of the witnesses, could reasonably credit what Gorman told hospital personnel and Boyd on the night of the incident, i.e., that he was stabbed with a pocket knife, and discount that at trial he disclaimed knowledge of the identity of the object. In addition, the testimony of D'Addissio and Boyd regarding the depth of the wound, and the possibility of the serious bodily injury or death if the wound had been in another location, either in the arm or chest, was sufficient evidence for a reasonable jury to conclude that the knife was used in a manner that could have caused serious bodily injury or death. Therefore, we find that there was sufficient evidence to support the jury's finding that Lister used a deadly weapon—the knife—in the commission of the assault. We overrule Lister's point of error.

We affirm the judgment of the trial court.


                                                    Bailey C. Moseley
                                                    Justice


Date Submitted:      November 18, 2016
Date Decided:        November 21, 2016

Do Not Publish

8