

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0070-15

**DONALD LYNN RAMSEY, A.K.A. DONALD LYNN RAMSAY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### SWISHER COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, KEASLER, RICHARDSON, YEARY, and NEWELL, JJ., joined. MEYERS, J., filed a dissenting opinion. ALCALA, J., concurred.

## O P I N I O N

Appellant was found guilty of forgery, and on appeal the court of appeals reversed his conviction, holding that the evidence was insufficient because there was no proof that Appellant had the intent to defraud or harm another. *Ramsey v. State*, No. 07-14-00249-CR, 2014 WL 7271488, at *3 (Tex. App.—Amarillo Dec. 17, 2014) (mem. op.) (not designated for publication). The State Prosecuting Attorney filed a petition for

discretionary review, which we granted, arguing that the court of appeals did not examine the totality of the evidence or reasonable inferences therefrom.[1] We agree and will reverse the judgment of the court of appeals.

## FACTS

Jimmie and Jed Owens founded and operated Owens Motor Machine, a company that performed electrical work. However, State's Exhibit 3 includes a signature card for the Owens Motor Machine bank account, which states that the account holder was "J E OWENS DBA OWENS MOTOR MACHINE." It further notes that Owens Motor Machine was a sole proprietorship, that the sole owner of the account was Jimmie, and that Jed was only an authorized agent on the account. When the State showed the exhibit to Jed during his testimony and asked him who the owner of that account was, he responded, "It's my father." When asked if there is a place on the card where it says "owner of the account," he answered, "Yeah. It's J.E. Owens on the owner." Appellant began working for the company in January or February of 2013. At some point after he was hired, he was allowed to move into the business shop, which had a cot, bathroom, and air conditioner. When working around town, Jed would drive himself and Appellant around in his work truck.[2] At night, Jed parked the truck in the shop where Appellant was

---

[1]The ground for review states, "Does an appellate court give proper deference to a jury's forgery finding of intent to defraud or harm when it fails to consider the totality of the evidence and rational inferences therefrom?"

[2]It appears Jed and Appellant primarily performed the electrical work because Jimmie was 84 years old.

living and would leave it unlocked. Appellant was the only employee of the company (other than the owners) for approximately six months before the fraudulent check was passed.

Both Jimmie and Jed were signatories on a checking account for Owens Motor Machine, and the names of record were "J.E. Owens" (Jimmie) and "J.J. Owens" (Jed). Jimmie testified that he usually signed checks "J.E. Owens" but sometimes wrote "Jimmie E. Owens," and in the past had signed them "Jimmie Owens." He also stated that Appellant was always paid by check, and that he would write "contract labor" in the memorandum line. According to Jed, there were two checkbooks for the account; his father had one, and he had the other. He kept his in his work truck and said that, aside from his father, the only other person with access to the checkbook in his truck was Appellant. He did testify, however, that other people occasionally stopped by the shop to talk to him about "electrical business." Jimmie and Jed denied executing the check in question and were adamant that they did not authorize anyone else to do so. Jed testified that he is familiar with his father's distinct handwriting, and the signature on the check was not his father's.

On June 11, 2013, Appellant went to Booger Red Liquor, which was located about a block and a half from the shop where he lived, and tendered to the on-duty clerk a check payable to himself in the amount of $65. The liquor store clerk honored the check because the Owenes had previously authorized it to cash Appellant's paychecks. According to the

on-duty clerk, Appellant bought cigarettes and beer, and the balance was given to him as change. The check was signed "Jim E. Owens" and "contract labor" was written in the memorandum line. At the time of the offense, Jimmie was 84 years old.

## COURT OF APPEALS

The court of appeals held that there was insufficient evidence to prove that Appellant intended to defraud or harm the victim because the State failed to prove that Appellant knew the check was forged. *Ramsey*, 2014 WL 7271488, at *3. In discussing the intent-to-defraud-or-harm element, it said that mere possession, passage, or presentment of a forged instrument is insufficient to infer intent to defraud, although the requisite intent can be proven by circumstantial evidence. *Id.* at *1. It went on to discuss our decision in *Stuebgen v. State*, 547 S.W.2d 29, 35 (Tex. Crim. App. 1977), and held that it controlled the outcome of this case based on the following passage:

> In the instant case, the record reflects that appellant made no statement from which it could be inferred that he knew the instrument was forged. Appellant was listed as the payee, and appellant did not falsely represent himself. No evidence was introduced to show that anything appearing on the check was in appellant's handwriting. Although appellant had access to [the victim]'s checkbook, and [the victim] normally paid his employees personally, we do not find that this evidence is sufficient to discharge the State's burden of showing that appellant acted with intent "to defraud or harm another."

*Id.* In its analysis, the court noted that, just as in *Stuebgen*, Appellant was usually personally paid; he had access to the checkbook, although there was evidence that other people had access to the checkbook as well; there was no evidence that the handwriting

on the check was that of Appellant; he was listed as the payee; and he never falsely represented himself. *Ramsey*, 2015 WL at *2 (citing *Crittenden v. State*, 671 S.W.2d 527, 528 (Tex. Crim. App. 1984)). It also explained that the fact that Jimmie usually signed checks "J.E. Owens" does not constitute proof that Appellant knew the check was forged because, although the forged check bore a different signature, Jimmie had executed checks in at least two other ways before and there is no record evidence that Appellant knew how Jimmie signed his checks. *Id.* at *3. For these reasons, according to the court, any inference that Appellant knew the check was forged would be based on speculation. *Id.*

Justice Pirtle, who authored the dissent, would have distinguished this case from our decisions in *Stuebgen* and *Crittenden* and held that there was sufficient circumstantial evidence to sustain the conviction. *Id.* at *3–4 (Pirtle, J., dissenting). He argued that the critical distinction between *Stuebgen*, and this case is that, in *Stuebgen* there was no memorandum on the check stating the purpose for which the check was given. Also, he distinguishes *Crittenden* based on the fact that, in *Crittenden*, there was no connection between the stolen check and the defendant, the defendant *said* nothing from which it could be inferred that he knew the check was stolen, and he did not flee when the bank would not honor the check. *Id.* at *4. Instead, Justice Pirtle concluded that the outcome of this case is controlled by our decision in *Williams v. State*, 688 S.W.2d 486, 490 (Tex. Crim. App. 1985),

Here, similar to *Williams* and unlike *Stuebgen* and *Crittenden*, Appellant attempted to pass an instrument that clearly stated that it was given for a specific purpose, to-wit: "contract labor." Furthermore, the evidence established that he was a former employee of the purported maker of the check, had access to a checkbook from their account and passed the instrument at a location where he knew his "paychecks" would be honored. Reviewing the evidence in the light most favorable to the jury's verdict, the evidence in this case circumstantially establishes that Appellant passed the check under circumstances inferentially representing the check was given for services rendered.

*Ramsey*, 2014 WL 7271488, at *4.

## THE LAW

1

When examining the legal sufficiency of the evidence, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Beyond a reasonable doubt, however, does not require the State to disprove every conceivable alternative to a defendant's guilt.[3] *Merritt*, 368

---

[3]We used to measure the sufficiency of evidence in circumstantial cases using the "reasonable hypothesis analytical" construct. Under that analytical framework, a conviction could be upheld only if "every other reasonable hypothesis raised by the evidence was negated, save and except that establishing the guilt of the defendant . . . ." *Geesa*, 820 S.W.3d at 158. One reason we disavowed the construct was to prevent usurpation of the fact finder's exclusive role to resolve inconsistencies in the evidence, including deciding whether the State's theory of the case is more credible than another reasonable, exculpating hypothesis raised by the evidence. *Id.*

S.W.3d at 525; *see Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex. Crim. App. 1991). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The trier of fact is the exclusive judge of the credibility and weight of the evidence and is permitted to draw any reasonable inference from the evidence so long as it is supported by the record. Inferences based on mere speculation, however, are insufficient to support a criminal conviction. *See Hooper*, 214 S.W.3d at 16–17.

## 2

The elements of forgery as alleged in the indictment are that (1) Appellant, (2) acting with intent to harm or defraud, (3) an elderly person, (4) passed, (5) a forged, (6) writing. TEX. PENAL CODE § 32.21(b). The only issue before us, however, is whether Appellant acted with intent to harm or defraud. To prove the requisite intent, the trier of fact must be able to reasonably infer that Appellant knew the instrument was forged beyond a reasonable doubt. *Okonkwo v. State*, 398 S.W.3d 689, 695 (Tex. Crim. App. 2013).

### ARGUMENTS OF THE PARTIES

### *A. The State*

The State makes two arguments as to why the court of appeals erred. First, the State asserts that, contrary to the decision of the court of appeals, a jury could have rationally concluded that circumstantial evidence established Appellant's guilt. It relies on the following evidence and inferences to support its argument: (1) Appellant was the beneficiary of the check, and there was no evidence of a motive for anyone else to forge a check on his behalf; (2) he had unlimited access to the checkbook in Jed's truck, which Jed left unlocked at night in the shop where Appellant lived; (3) to avoid scrutiny, Appellant passed the check at the liquor store where he had previously cashed his paychecks; and (4) even if the evidence did not show that Appellant was the forger, it nonetheless showed that he knew the check was forged. The State asserts that he knew the check was forged because, although Appellant had completed no compensable work[4] and the memorandum noted that the payment was for "contract labor," he still accepted the payment and passed the check. It also asserts that the forged check was similar enough to actual paychecks executed by Jimmie and Jed to show that the forger was familiar with how the Owens's executed paychecks (e.g., including the notation "contract labor"), but was different enough to show it was forged because Jimmie did not sign paychecks that way.

---

[4]The parties dispute whether any evidence was offered on this point at trial, but a jury need not leave its common sense at the door when determining whether a person is guilty. *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). On these facts, it would be rational for a trier of fact using its common sense to infer that a person would know whether he performed compensable work and whether he had been paid for that work.

Second, the State argues that the appellate court's reliance on our decision in *Stuegben* is inapposite because it is a pre-*Jackson* case that was decided by applying the now abandoned alternative-hypothesis construct, which does not require the same deference to the jury's resolutions of factual issues as the *Jackson* standard requires. It also contends that *Stuebgen* is factually distinguishable because, in this case, Appellant's access to the checkbook was nearly exclusive, and "there is a nexus between Appellant and the check because of the obvious attempt to duplicate the unique manner in which Jimmie issued Appellant's paychecks."

### B. Appellant

Appellant argues that the court of appeals reached the right result because there was no evidence that he knew the check was forged. And, according to Appellant, because there was no evidence that he knew the check was forged, the court of appeals did not fail to defer to the verdict because no rational inferences can be drawn from a "null set."

Appellant also asserts that he was not the only person with sole and unlimited access to the checkbook in Jed's truck, as the State contends, and that the record shows that Jimmie possessed a second checkbook for the account. Regarding his knowledge that the check was not for work he performed, Appellant argues that this was a contested issue at trial, and he cites evidence that Jimmie recently had back surgery and took pain medication that could possibly make him forget things. Finally, Appellant also challenges

the State's assertion that "[n]either Jimmie nor Jed had signed or issued the check to Appellant" because, according to him, there was no evidence to that effect.

**ANALYSIS**

### A. The evidence was sufficient for the jury to reasonably infer that Appellant passed the check with the intent to defraud or harm another.

Although Appellant argues that there was insufficient evidence for the jury to conclude that neither Jimmie nor Jed signed the check or that Appellant had sufficient access to steal the check based on conflicting evidence at his trial, the function of resolving conflicts in the evidence and making reasonable inferences therefrom is assigned to the jury. *Merritt*, 368 S.W.3d at 525. Therefore, the issue we must resolve is not whether a jury could have found Appellant not guilty because there was conflicting evidence, but whether *any* rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Id.*

Jimmie and Jed testified that neither of them signed the check or authorized its issuance, but Jimmie also testified that he "possibly" forgets things when he takes his pain medication. Appellant argued that Jimmie's pain-medication testimony allowed the jury to reasonably infer that Jimmie forgot that he actually wrote the check. Based on that testimony, the jury could have reasonably believed that Jimmie executed the check, but the jury did not have to believe that and, as is evident by its verdict, it did not.

Similarly, there is conflicting evidence regarding the extent of Appellant's and others access to the check in question. On the one hand, Jed testified that there were two

checkbooks for the account and that he and Jimmie each had one. He also said that people would occasionally stop by the shop to talk electrical business.[5] On the other, Jed kept his checkbook in his truck, which he left unlocked in the shop at night where Appellant lived. Consequently, the jury could have inferred that someone other than Appellant somehow gained access to Jimmie's checkbook and stole the check. But, if that were the case, then the jury would also have had to believed that the person who stole the check executed it in favor of Appellant (instead of himself), knew to write "contract labor" in the memorandum line, and Appellant somehow innocently came into the possession of the stolen check. In contrast, the jury also could have resolved the conflicting evidence against Appellant and reasonably inferred, based on the evidence, that he stole the check, forged it, and passed it at the liquor store with the intent to defraud and harm Jimmie.

We also agree with Justice Pirtle that *Stuebgen* and *Crittenden* are distinguishable. Both cases were decided before we handed down our decision in *Geesa*, in which we disavowed the reasonable-alterative-hypothesis construct,[6] and *Stuebgen* was decided before *Jackson*, which clarified the legal sufficiency standard of review. And although

_____

[5]There was no evidence that any of the people that would occasionally stop by the shop to talk to Jed about electrical business had unsupervised access to the truck or any reason to know that the checkbook was in his truck.

[6]*See infra*, note 3; *Wise v. State*, 364 S.W.3d 900, 902–03 (Tex. Crim. App. 2012) (finding sufficient evidence to sustain the conviction after concluding that the court of appeals misapplied the standard of review for sufficiency by focusing on the possible alternative explanations, rather than determining whether the jury's inference was reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict").

neither decision cites the "reasonable hypothesis" construct, both analytically relied on negating exculpatory theories raised by the evidence. *Crittenden*, 671 S.W.2d at 528; *Stuebgen*, 547 S.W.2d at 32. In light of *Geesa* and *Jackson*, the only standard by which to review the sufficiency of the evidence in a forgery case, whether based on direct or circumstantial evidence, is the standard of review set out in *Jackson*.

The court of appeals reached the wrong result because it incorrectly applied the *Jackson* legal sufficiency standard, which requires that the combined and cumulative force of all the evidence be viewed in the light most favorable to the conviction. After properly applying the *Jackson* standard, we find the evidence sufficient to uphold Appellant's conviction. We sustain the State's ground for review, reverse the judgment of the court of appeals, and reinstate Appellant's conviction for forgery.

Hervey, J.

Publish

Delivered: October 28. 2015