

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00799-CR

Derri Raye **LUKASIK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR9695
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  October 3, 2018

REVERSED AND RENDERED

Derri Raye Lukasik was convicted by a jury of theft and sentenced by the trial court to two years' imprisonment; however, her sentence was suspended, and she was placed on three years' community supervision.  On appeal, Lukasik contends the evidence is insufficient to support her conviction and trial counsel rendered ineffective assistance of counsel.  Because we hold the evidence is legally insufficient to support Lukasik's conviction, we reverse the trial court's judgment and render a judgment of acquittal.  Because the resolution of Lukasik's second issue is not necessary to the final disposition of the appeal, we do not address it.  *See* TEX. R. APP. P. 47.1.

## BACKGROUND

Lukasik was charged with intentionally depriving the Texas Department of Human Services of electronic benefits and Medicaid by unlawfully appropriating those benefits without the Department's effective consent. At trial, the State introduced evidence that two applications were submitted to the Department for Medicaid and Supplemental Nutrition Assistance Program benefits (commonly referred to as food stamps), and Lukasik verbally confirmed the information in the applications was correct when she was contacted by a Department caseworker. One application dated October 2013 listed the household income as zero, and the other application dated January 2014 listed the household income as $15,000. An investigator for the Department, Jason Escobar, reviewed bank records and testified the household income was a much greater amount, and the family did not qualify for the $21,640.08 in benefits they received. After hearing the evidence, a jury found Lukasik guilty of theft.

## SUFFICIENCY

In her first issue, Lukasik contends the evidence is insufficient to support her conviction.[1] Lukasik contends Escobar's calculations of her family's income "were based on speculation and a lack of knowledge about any business deductions." Because the Lukasiks owned their own business, Lukasik asserts Escobar's testimony was "inconsistent and unintelligent" because he was unable to explain "how to calculate business income with allowable deductions for the day to day operation of a business." The State responds Escobar testified "[o]nly gross income is considered, not any deductions," and Escobar's review of the bank records "confirmed that if [Lukasik] had accurately reported her income, she would not have qualified for any benefits."

---

[1] Although Lukasik's brief refers to both legal and factual sufficiency, the Texas Court of Criminal Appeals has held the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)

"When examining the legal sufficiency of the evidence, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt." *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). A jury is permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id*. at 16. Juries are not, however, permitted to reach a conclusion based on mere speculation; [s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Id*. at 15-16. As a reviewing court, we must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Only two witnesses testified at trial. The custodian of the bank records for the Lukasiks' personal and business accounts identified the bank records which were admitted as an exhibit and testified those records were previously turned over to the Department. Escobar testified Lukasik was listed as head of household on the applications that were submitted to the Department requesting benefits, is the person who was interviewed by the Department during the application process and confirmed the information on the applications was correct, and is the person who received the benefits. After receiving the bank records, Escobar examined the deposits into the accounts and based on those deposits determined the Lukasiks received $217,935.55 in income for 2013. Escobar testified eligibility for benefits typically is based on gross income. Based on his investigation, Escobar prepared a Computation of Erroneous Benefits showing the Lukasiks received $21,640.08 in benefits for which they did not qualify.

On cross-examination, Escobar testified he would have looked at any additional information requested by the caseworker who initially reviewed the applications and remembered seeing a tax document and bank statements during his evaluation of Lukasik's file. Escobar identified a form used by the Department entitled "Client's Statement of Self-Employment Income," which requires the person to list income and expenses. The form explains, "Expenses are your costs of doing business," and provides numerous examples. During his investigation, Escobar recalled seeing a copy of the form which Lukasik had completed. Escobar acknowledged the Department's caseworkers consider the form in determining eligibility for benefits and also agreed the form takes into consideration deductions for business expenses in determining self-employment income. Escobar admitted he did not have any expertise in determining business income and was not familiar with deductions allowed by the IRS in computing a business's profit; however, he stated he did make certain deductions, including deductions for fuel expenses. Escobar admitted he was guessing about what expenses were deductible from the bank records. In response to whether "it's completely possible that everything on those bank statements was deductible and should not have been counted as income," Escobar responded, "It's possible." When asked if "it's the same situation" with the income, Escobar responded, "No. Because we count the gross income. We don't — we don't take any deductions or any other expenses out of the income, it's just whatever they make." Escobar identified a portion of the Department's handbook used by the caseworkers in determining eligibility which was admitted as evidence. Section A-1323.4.5 of the Department's handbook entitled "Allowable Costs of Producing Income" provides, "Allowable self-employment expenses are based on costs that can be deducted from federal income taxes according to the IRS Schedule C, Form 1040 – Profit or Loss from Business. There are certain self-employment expense types that are not allowed for SNAP." Escobar agreed section A-1323.4.5 had about a page of expenses that were deductible and admitted

he did not make deductions based on the categories allowed by section A-1323.4.5. The portion of the Department's handbook admitted into evidence also contains section A-1323.4.7 entitled "Determining Net Self-Employment Income" which provides annual and monthly computation methods for determining net self-employment income by subtracting allowable expenses from gross self-employment income.

On re-direct examination, Escobar testified the appraised value of the Lukasiks' home was approximately $300,000 and the deposits into the Lukasiks' bank accounts ranged from $65,000 a month to $100,000 in April of 2013. However, Escobar previously testified no deposits were made in some months, and the question on the applications asked about income in the past three months. Escobar stated he requested tax documents from the Lukasiks during his investigation, but they did not provide them.

On re-cross examination, Escobar testified he briefly reviewed a tax document that was in the file and used it as a reference to determine the expenses to deduct. Escobar admitted he did not consult with the caseworkers who initially determined the Lukasiks were eligible for benefits. Escobar also identified the following which were introduced into evidence: (1) a Client's Statement of Self-Employment Income completed by Lukasik on October 28, 2013, listing $10,000 in income and $15,000 in expenses; and (2) a Client's Statement of Self-Employment Income completed by Lukasik on February 7, 2014, listing $15,000 in income and $15,556.30 in expenses. Escobar testified he did not look at those documents during his investigation; however, on re-direct examination, Escobar testified the documents were not signed by anyone with the Department, and he did not know if the documents were ever turned over to the Department.

The jury could have given no weight to the Client's Statement of Self-Employment Income completed by Lukasik based on Escobar's testimony that the Department may not have received the documents. As previously noted, however, juries are not permitted to reach a decision based

on mere speculation by "theorizing or guessing about the possible meaning of facts and evidence presented." *Hooper*, 214 S.W.3d at 16. In this case, the jury could not ignore the evidence that the Department's handbook set forth numerous deductions that must be made in computing self-employment income for eligibility purposes and provided a method for determining net self-employment income. Although Escobar testified the Lukasiks' income in 2013 was $217,935.55, he testified he computed that amount based on deposits into the Lukasiks' bank accounts and used the Lukasiks' gross income in evaluating their eligibility. Although he later testified he made some deductions, he admitted he was not familiar with the deductions allowed in computing a business's profit and that he guessed about what expenses were deductible from the bank records. Similarly, although Escobar testified the deposits into the Lukasiks' bank accounts ranged from $65,000 a month to $100,000 in April of 2013, he also admitted no deposits were made in some months, and the question on the applications asked about income in the past three months. In addition, in those months in which deposits were made, Escobar did not calculate the deductions that should have been allowed pursuant to the Department's handbook. Finally, no evidence was presented regarding the amount of income that would make the Lukasiks ineligible for benefits. Because no evidence was presented establishing the Lukasiks' self-employment income as computed in accordance with the Department's handbook, the jury could not speculate or guess what that amount would be using the proper computations. Accordingly, the evidence is legally insufficient to support the jury's finding that Lukasik unlawfully appropriated benefits from the Department.

## CONCLUSION

Because the evidence is legally insufficient to support Lukasik's theft conviction, we reverse the trial court's judgment and render a judgment of acquittal.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH