**Affirmed and Memorandum Opinion filed November 29, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00599-CR

### CRYSTAL TYLENE FONTENOT, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law #3 & Probate Court
Brazoria County, Texas
Trial Court Cause No. 227566**

## M E M O R A N D U M     O P I N I O N

Appellant Crystal Tylene Fontenot appeals her conviction for the offense of falsification of drug test results. The offense is intentional or knowing possession with intent to use a substance or device designed to falsify drug test results. *See* Tex. Health & Safety Code Ann. § 481.133 (Vernon 2017). She contends the evidence is legally insufficient to support her conviction. Because legally sufficient evidence supports appellant's conviction, we affirm the trial court's judgment.

BACKGROUND

Appellant was charged with intentional or knowing possession with intent to use a substance designed to falsify drug test results, which is a Class B misdemeanor. A two-day jury trial was held on July 17, 2017.

At trial, Angleton Police Department Officer Jordan Driscoll testified that she stopped appellant for a traffic violation after midnight on January 25, 2017. Officer Driscoll testified she asked appellant "a series of questions, including where she works, her phone number, where she lives." Appellant stated she worked for her dad "but she was attempting to get a job at the plant working for Zachry." Officer Driscoll testified that she arrested appellant because a routine records check revealed appellant had outstanding warrants for traffic violations.

Officer Driscoll testified that she conducted an inventory search of appellant's car together with Angleton Police Department Officer Corey Budnick, who was at the scene to assist her. During the car search, the officers found a box labeled "Magnum Detox Fetish Synthetic Urine" on the floorboard behind the driver's seat. Officer Driscoll testified that she believed appellant intended to use the synthetic urine to "pass her drug test for Zachry because she was attempting to get a job there." Officer Driscoll testified that she believed probable cause existed to also arrest appellant for the offense of falsification of drug test results because appellant "kept advising that she was attempting to get a job at Zachry, as well as she was on probation." Appellant told Officer Driscoll that her next probation appointment was scheduled for January 27, 2017.

During the car ride to the police station, Officer Driscoll did not ask appellant who the synthetic urine belonged to; instead, appellant volunteered that she bought it for a friend. The State introduced into evidence the box with the synthetic urine that officers found in appellant's car. The box was labeled, "Magnum Detox Fetish

Synthetic Urine, 100 Percent Guaranteed Quality, 2 Fluid Ounces." The label further stated, "One-time usage kit includes synthetic urine sample, squirt bottle with cap and thermometer, heating pad, details, instructions and guarantee. Protect your DNA from genetic profiling, undetectable, easy and effective, authentic appearance, toll free support, 100 percent guaranteed quality." Officer Driscoll testified that, based on her investigation, she believed appellant "intentionally or knowingly possessed with intent to use a substance designed to falsify drug test results."

Officer Budnick also testified at trial, confirming that he and Officer Driscoll found a box of synthetic urine during the inventory search of appellant's car. Officer Budnick testified that in his experience people "typically" use synthetic urine to falsify a drug test. Officer Budnick testified he has never "seen or . . . heard of individuals using synthetic urine for other purposes" besides falsifying drug tests.

Appellant's community supervision officer, Laurel Latourneau, testified that her duties included contacting the defendant and checking in monthly, making sure the defendant is complying with community supervision conditions, performing drug tests, and making field visits. Latourneau testified that appellant had a meeting scheduled with Latourneau for January 24, 2017, but appellant rescheduled the meeting to January 27, 2017. Latourneau explained that she tested appellant's urine randomly during scheduled visits, and appellant was aware she was subject to random drug tests. Latourneau also testified that she was familiar with substances and devices used to falsify drug tests. When she was shown the synthetic urine found in appellant's car and asked if she recognized the substance, Latourneau stated that "[i]t's a falsification device generally used to falsify drug test results."

The State also played Officer Driscoll's police car video of appellant's traffic stop and arrest for the jury. The video confirmed appellant told Officer Driscoll that she had applied for a job at Zachry two days earlier. Appellant stated that she was

"on probation now" and that she had a meeting scheduled with her probation officer on January 27, 2017. Appellant was handcuffed and placed in Officer Driscoll's police car. The video showed Officers Driscoll and Budnick conducting an inventory search of appellant's car and finding a box of synthetic urine. After completing the inventory search, Officer Driscoll returned to the police car and appellant asked why her car was searched without consent. Officer Driscoll explained that no consent was required to conduct an inventory search of appellant's car incident to arrest.

On the ride to the police station, appellant asked Officer Driscoll how long it would take for her traffic ticket charge to be set in court. Officer Driscoll responded that appellant "has new charges now" because she was in possession of synthetic urine. Appellant stated she bought the urine at a close-by store. She stated, "[T]hat makes me so mad . . . I'm so mad because I did buy it, but I bought it for a friend, you know, and I did not know it was illegal." Appellant continued to talk to Officer Driscoll and questioned how synthetic urine was illegal when it could be bought at a store. Appellant also stated, "I have to take a pee test for Zachry, for my P.O. [probation officer], for everything."

The jury found appellant guilty. The trial court sentenced appellant to confinement for 80 days with "credit for 85 days spent to apply to . . . jail time." Appellant filed a timely appeal.

## ANALYSIS

Appellant contends in her sole issue that the evidence is legally insufficient to support the jury's verdict because the testimony presented does not show appellant's "intent to use the synthetic urine to falsify a drug test designed to detect the presence of a controlled substance or marihuana."

4

The legal sufficiency standard of review is the only standard we apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We consider the combined and cumulative force of all admitted evidence and any reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in its verdict. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015).

The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Temple*, 390 S.W.3d at 360. We defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Kolb v. State*, 523 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *see Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Kolb*, 523 S.W.3d at 214.

As applicable in this case, a person commits an offense if the person knowingly or intentionally uses or possesses with intent to use any substance or device designed to falsify drug test results. Tex. Health & Safety Code Ann. § 481.133. Drug test means a lawfully administered test designed to detect the presence of a controlled substance or marihuana. *Id*.

Appellant argues the evidence is legally insufficient to establish her "intent to

5

use the synthetic urine to falsify a drug test designed to detect the presence of a controlled substance or marihuana" because there is no evidence that (1) appellant had a scheduled meeting with an employer or future employer "requiring her to submit to a lawfully administered test designed to detect the presence of a controlled substance or marihuana;" (2) any random drug test conducted by Latourneau was for the purpose of detecting a controlled substance or marihuana; and (3) "[a]ppellant's probation was conditioned on her submitting to drug testing[,] only that it was done when requested."

Contrary to appellant's contentions, the jury reasonably could have concluded based on the evidence presented that (1) appellant knew she was required to submit and expected to take a drug test as a condition of her community supervision and in connection with her employment application at Zachry; and (2) the test would be conducted for the purpose of detecting a controlled substance or marihuana.

The jury viewed the video of appellant's January 25, 2017 stop and arrest. It could hear appellant inform Officer Driscoll that she applied for employment at Zachry and that she had to take a "pee test for Zachry," evidencing that appellant knew she was required to take a drug test and expected to do so at Zachry to gain employment. The jury also heard appellant informing Officer Driscoll that she was on community supervision and that she rescheduled her meeting with her community supervision officer to January 27, 2017. Appellant admitted she was required to submit to drug tests as a condition of her community supervision when she told Officer Driscoll, "I have to take a pee test . . . for my P.O. [probation officer], for everything." The jury also could have concluded that appellant was worried about the officers finding the synthetic urine in her car because she inquired why the officers were allowed to search her car without asking for her consent.

Further, Latourneau testified that appellant had a meeting originally scheduled

6

for January 24 but rescheduled the meeting for January 27. Latourneau explained she tests appellant's urine randomly during scheduled visits, and that the urine test she uses tests, among others, for substances, ph balance, and temperature. She explained that appellant knew she was subject to random drug tests. Latourneau testified that she was familiar with substances and devices used to falsify drug tests. She recognized the synthetic urine found in appellant's car as "a falsification device generally used to falsify drug test results."

The jury also heard Officer Budnick's testimony that in his experience synthetic urine is "typically" used to falsify a drug test and that he has never "seen or . . . heard of individuals using synthetic urine for other purposes" than falsifying drug tests. Officer Driscoll testified she was not "familiar with any other practices" involving synthetic urine and believed that based on her investigation appellant intended to use the synthetic urine to pass an upcoming drug test.

Considering all the evidence and any reasonable inferences therefrom, including the cumulative force of incriminating circumstances, we conclude that the jury as the sole judge of credibility and weight to be attached to testimony reasonably could have determined that appellant knowingly or intentionally possessed the synthetic urine with intent to use it to falsify results of a drug test — a test designed to detect the presence of a controlled substance or marihuana — she expected to take at Zachry or at the meeting with her community supervision officer. *See Johnson*, 509 S.W.3d at 322; *Ramsey*, 473 S.W.3d at 809; *Temple*, 390 S.W.3d at 360. Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support the jury's verdict.

Accordingly, we overrule appellant's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/    William Boyce
Justice

Panel consist of Justices Boyce, Christopher, and Busby.
Do Not Publish — Tex. R. App. 47.2(b).