**Affirmed and Memorandum Opinion filed June 22, 2021.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-19-00480-CR

_____

**ENRIQUE  BAEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1531489**

## MEMORANDUM OPINION

Appellant Enrique Baez appeals his conviction for aggravated sexual assault, a first-degree felony. *See* Tex. Penal Code Ann. § 22.021. In three issues, Baez argues (1) the evidence is insufficient to support his conviction, (2) the trial court erred when it admitted the complainant's medical records because they contained hearsay, and (3) the trial court erred when it admitted the complainant's medical records because they violated the Confrontation Clause. We affirm.

# I. BACKGROUND

On February 10, 2017, Baez was indicted for the aggravated sexual assault of E.C.[1] Specifically, the indictment alleged that Baez, on November 20, 2016, intentionally and knowingly caused the penetration of E.C.'s anus with his penis, without E.C.'s consent, and by acts or words threatened to cause the death of E.C. during the assault. *See id.* § 22.021(a)(1)(A)(i), (a)(2)(A)(iii). Baez pleaded not guilty and proceeded to trial. At trial in May of 2019, the State presented testimony from multiple witnesses but not from E.C.

Tanika Miller, an officer with the Houston Police Department, testified that she was "flagged down" by a woman on November 20, 2016, and the woman informed Miller that her friend, E.C., had been assaulted. Miller followed the woman to E.C.'s apartment and found E.C. with "severe injuries to her face." Miller took photographs of E.C.'s injuries, which were admitted into evidence, and learned that Baez, E.C.'s ex-boyfriend, was a potential suspect.

At trial, A.C., E.C.'s eldest son, testified that E.C. and Baez were in a romantic relationship and had a young child together, but that Baez was no longer living with E.C. at the time of the incident. A.C. explained that he visited his mother in the hospital the morning of November 20, 2016, and that E.C.'s "face was unrecognizable." Specifically, A.C. testified that E.C.'s "eyes were shut swollen, black, to a degree that you couldn't even see her pupils," her "nose was swollen and bloody," and her lip "was split." According to A.C., when he walked into his mother's room at the hospital, E.C. was talking with Baez on speaker phone, and Baez was begging E.C. not to call the police. A.C. did not know E.C.'s whereabouts at the time of trial.

Lindsey Gagnon testified she is a nurse in the emergency department of

---

[1] To protect the privacy of the complainant, we identify the complainant and her eldest son by initials—E.C. and A.C., respectively.

Memorial Hermann Southwest Hospital and is certified as a sexual assault nurse examiner (SANE). Gagnon explained the process for a SANE exam and that the hospital "had a special packet to go step-by-step." In performing the SANE exam, Gagnon would "get all the patient's information," note "the patient's testimony . . . in quotations word for word," indicate on paper diagrams of the body whether there were "any abrasions or bruising or scratching," and "write how many swabs were collected from each area." Gagnon stated that part of her role involved taking the patient's medical history "to help us get a better idea of any medical issues they may have," as well as for the purpose of collecting evidence. In the event of a sexual assault, Gagnon asks about the assault "[s]o we can get a good story and we do write what they say word-for-word, just kind of know what we are dealing with, what all they remember, what time this happened, [and] where it happened." This information, according to Gagnon, is used by "everybody," including the physician, to know the kind and quality of evidence that can be obtained. Gagnon also collected swabs of E.C.'s mouth, vagina, anus, and underwear.

When the State moved to admit into evidence Gagnon's SANE report concerning E.C. and E.C.'s medical records from the hospital, the following colloquy occurred:

| [State]: | At this time, Your Honor, the State would like to offer into evidence State's Exhibits 19, as well as State's Exhibits 20. They are medical records that are accompanied with business records affidavits. |
| --- | --- |
| [Defense Counsel]: | May I have a moment, Judge? |
| [Trial Court]: | You may. |
| [Defense Counsel]: | Could we approach, Your Honor? |

3

| | |
|---|---|
| [Trial Court]: | You may. |

*(At the Bench)*

| | |
|---|---|
| [Defense Counsel]: | With regards to State's Exhibit 19, which is the [SANE] report, entitled, Sexual Assault Forensic Examination Report and State's Exhibit 20, which appear to be medical records from Memorial Hermann Southwest Hospital, the Defense would object that they contain hearsay testimony evidence. |
| [Trial Court]: | Anything else? |
| [Defense Counsel]: | That's it. |
| [Trial Court]: | And for purposes of the record, Ms. Beilman, have these been on file the requisite ten days? |
| [State]: | Yes, Your Honor. |
| [Trial Court]: | And, Mr. Ortiz, you have had an opportunity to review them; is that correct? |
| [Defense Counsel]: | I have reviewed them, Judge, and it is my understanding that the complainant is unavailable. |
| [Trial Court]: | Okay. Can I see them? |
| [State]: | Yes. |
| [Trial Court]: | You-all can sit back down. |

*(Open court)*

| | |
|---|---|
| [Trial Court]: | State's Exhibit 19 and 20 are admitted. |

Gagnon's report provided that E.C. told her:

He came into my house, pulled my hair, while he told me to go to the bedroom because he needs to talk to me. When we got to the room he began hitting me. He raped me and burned me with cigarettes to get

4

my legs open. And then he tied my hands up and my mouth and he pulled a knife out. . . . And he said don't bother calling the police because you will already be dead. Then he untied my mouth and my hands and then he left.

Gagnon testified, and her SANE report states, that E.C. alleged at the hospital that there was penetration of her anus and vagina. Gagnon also testified that the "emergency department clinical summary" admitted into evidence stated "that the patient was physically and sexually assaulted by the father of her child six hours prior to arrival." The E.M.S. patient care report provided that E.C. "was asleep on the sofa [and] forgot to lock her door and she fell asleep on the sofa and that the assault—assault person came in around 4:00 a.m." Finally, Gagnon explained that there were no tears, lacerations, swelling, redness, or other abnormality of E.C.'s anus, but that "[j]ust because something may appear normal doesn't mean that there was no penetration."

Loren Magness, a detective with the Special Victims Sex Crimes Division of the Houston Police Department, testified that she was assigned to investigate E.C.'s complaint. Magness explained she met with E.C. on December 7, 2016. Magness stated that E.C. made statements during the interview "consistent" with the allegations E.C. made in "the initial report and the SANE report" providing that Baez had sexually assaulted her by forcing her to have anal intercourse. Eventually, Baez was arrested in Florida, and Magness arranged for him to be transported back to Texas and obtained a warrant to get a sample of Baez's DNA.

Katherine Morgan, a forensic DNA analyst, testified that she performed a DNA analysis of swabs gathered during E.C.'s examination and Baez's swab collected after his arrest. Morgan explained that male DNA was recovered from sperm found on the swab of E.C.'s underwear and that Baez could not be excluded as a possible contributor of that DNA profile. Morgan testified that "[t]he probabilities that a randomly chosen, unrelated individual would be included as a

possible contributor to this DNA profile is approximately one in 17 quintillion per Caucasians; one in 21 quintillion for African-Americans; one in 8 quintillion for Hispanics; and one in 140 quintillion for Asians . . . ." The results of E.C.'s vaginal and anal swabs "were inconclusive for male DNA."

The jury found Baez guilty of the offense and assessed punishment at ten years' imprisonment in the Texas Department of Criminal Justice Institutional Division. This appeal followed.

## II.    SUFFICIENCY

In his first issue, Baez argues that there was legally insufficient evidence to support his conviction.

### A.    STANDARD OF REVIEW & APPLICABLE LAW

When examining the legal sufficiency of the evidence, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). In doing so, we give deference to the responsibility of the jury as factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from facts. *Harmon v. State*, 167 S.W.3d 610, 613 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Inferences based on mere speculation, however, are insufficient to support a criminal conviction. *Ramsey*, 473 S.W.3d at 809.

We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the offense. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily

increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* That is to say, the hypothetically correct jury charge could not simply quote the language of the statute; rather, it must track the elements of the law specifically alleged by the indictment. *Id.* at 404–05.

In this case, a hypothetically correct jury charge would instruct the jury that it could convict Baez of the offense if it found beyond a reasonable doubt that (1) Baez (2) intentionally or knowingly (3) caused the penetration of E.C.'s anus (4) without her consent, and Baez (5) by acts or words in the presence of E.C. (6) threatened to cause her death. *See* Tex. Penal Code Ann. § 22.021(a)(1)(A)(i), (a)(2)(A)(iii). Baez only challenges the sufficiency of the evidence underlying the jury's finding that he was the assailant and that he caused the penetration of E.C.'s anus. *See id.*

**B. ANALYSIS**

**1. IDENTITY**

The State must prove that the accused is the person who committed the crime. *Fang v. State*, 544 S.W.3d 923, 927 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Identity may be proven through direct or circumstantial evidence, and through inferences. *Id.*; *see Ramsey*, 473 S.W.3d at 809.

Here, E.C. did not testify at trial that Baez was her assailant. However, Officer Miller testified that, after she spoke with E.C. and obtained E.C.'s statement, she filed a warrant for Baez's arrest. Specifically, Miller testified that: she gathered E.C.'s statement after the assault; she was made aware during her investigation of "the suspect's" name; and she filed a "to-be warrant" with the district attorney for the arrest of "Enrique, um Baez or Carl Baez."[2] A rational juror

---

[2] Miller's "to-be warrant" appears in the record and lists the defendant as "Enrique Baeze." The extra "e" in "Baeze" is marked over by hand on the typed warrant to indicate

could infer from this testimony that E.C. identified Baez as her assailant to Miller. *See Fang v. State*, 544 S.W.3d 923, 928 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Furthermore, Magness stated that E.C. made statements during her interview "consistent" with the allegations that Baez had sexually assaulted her by forcing her to have anal intercourse, and Morgan testified that Baez's DNA was recovered from sperm found on E.C.'s underwear after the assault. Viewing this evidence in the light most favorable to the conviction, we conclude that a rational trier of fact could have found that Baez was E.C.'s assailant. *See Ramsey*, 473 S.W.3d at 808–09; *see also Hinojosa v. State*, 4 S.W.3d 240, 246 (Tex. Crim. App. 1999) (holding that DNA evidence was sufficient to show identity of sexual assault perpetrator).

### 2. SEXUAL ASSAULT

Baez argues next that there was insufficient evidence that E.C. "was sexually assaulted by penetration of the anus." Specifically, Baez argues that, "[w]hile the form used for the SANE exam indicates by checked boxes penetration was anal and vaginal . . . the history portion of the hospital records states that the [c]omplainant reported 'it was vaginal penetration.'"

Here, Gagnon testified that the emergency department report provided that E.C. indicated there was vaginal penetration, but the report did not provide that there was anal penetration. However, Gagnon also testified that E.C. alleged during the SANE examination that there was anal penetration, and Gagnon's SANE report noted the same. The jury was free to believe the SANE report and Gagnon's testimony providing that there was penetration of E.C.'s anus and disregard any contrary evidence. *See Johnson*, 419 S.W.3d at 671; *see also Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) ("[W]e presume that the jury resolved the

---

"Baez" as the correct spelling of the defendant's last name.

conflicts in favor of the verdict.").

Baez also argues that "the [c]omplainant had no injuries to the perineum or the anus." However, Gagnon explained that it is possible for non-consensual sex to occur without any injuries to the anus.

Viewing this evidence in the light most favorable to the conviction, we conclude that a rational trier of fact could have found that Baez sexually assaulted E.C. by penetration of E.C.'s anus. *See Ramsey*, 473 S.W.3d at 808.

**3. SUMMARY**

The evidence is legally sufficient to support the jury's finding that Baez was E.C.'s assailant and that he penetrated E.C.'s anus. We overrule Baez's first issue.

## III.   HEARSAY

In his second issue, Baez argues that "[t]he trial court violated the Texas Rules of Evidence by admitting, over objection, medical records containing hearsay statements of the complainant." Specifically, Baez complains of Gagnon's testimony, based on E.C.'s medical records from the hospital, providing that E.C. stated that the assailant was "the father of her child." Baez argues the statement was hearsay and that the exception asserted by the State did not apply because "the State did not obtain any testimony from the nurse, or any other witness, that the statements in issue were pertinent to treatment." *See Taylor v. State*, 268 S.W.3d 571, 590–91 (Tex. Crim. App. 2008) ("We think it is appropriate . . . to require that the proponent of the hearsay exception make the record reflect that it was important to the efficacy of the treatment that the [medical] professional know the identity of the perpetrator.").

## A.   STANDARD OF REVIEW & APPLICABLE LAW

We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Gutierrez v. State*, 585 S.W.3d 599, 615 (Tex. App.—Houston [14th Dist.] 2019, no pet.). A trial court abuses its discretion if the ruling lies outside the

zone of reasonable disagreement. *Id.*

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted in the statement. Tex. R. Evid. 801(d). Generally, hearsay is not admissible unless the Texas Rules of Evidence, a statute, or other rule prescribed under statutory authority provides otherwise. Tex. R. Evid. 802. Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible despite its hearsay character. *Taylor*, 268 S.W.3d at 578–79. Rule 803(4) provides an exception to the hearsay rule if a statement was (1) "made for—and is reasonably pertinent to—medical diagnosis or treatment" and (2) "describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4). "This exception is based on the assumption that such statements are reliable because the speaker appreciates that the correctness of the diagnosis or effectiveness of the treatment may depend on the accuracy of the information given [to] the [medical professional]." *Austin v. State*, 222 S.W.3d 801, 811 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

## B.    DISCUSSION

Assuming, without deciding, that the trial court abused its discretion when it admitted the complained-of statement, we nevertheless conclude that Baez was not harmed by its admission.

The admission of inadmissible hearsay constitutes non-constitutional error subject to the harm analysis under Texas Rule of Appellate Procedure 44.2(b), which requires the reviewing court to disregard a non-constitutional error that does not affect the defendant's substantial rights. *Rivera-Reyes v. State*, 252 S.W.3d 781, 786–87 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see* Tex. R. App. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). An error affects

10

a defendant's substantial rights when it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson*, 43 S.W.3d at 4; *Rivera-Reyes*, 252 S.W.3d at 787. However, such error is harmless if, after examining the record as a whole, we are reasonably assured that the error did not influence the jury verdict or had but a slight effect. *Johnson*, 43 S.W.3d at 4; *Rivera-Reyes*, 252 S.W.3d at 787.

Here, the complained-of testimony involves the identification of Baez as E.C.'s assailant. As noted above, there was other, legally sufficient circumstantial and direct evidence identifying Baez as the assailant that was admitted without objection. Specifically, there was evidence that: (1) Officer Miller filed a "to-be warrant" for Baez's arrest after speaking with E.C.; (2) E.C. made statements to Magness "consistent" with allegations that Baez sexually assaulted E.C. by forcing her to have anal intercourse; and (3) Morgan recovered Baez's DNA from sperm found on E.C.'s underwear. Because the facts provided by Gagnon's objected-to testimony—the identification of Baez as E.C's perpetrator—was shown by other unobjected-to evidence, we conclude that the error, if any, was harmless. *See, e.g.*, *Anderson*, 717 S.W.2d at 627 ("If the fact to which the hearsay relates is sufficiently proved by other competent and unobjected to evidence, as in the instant case, the admission of the hearsay is properly deemed harmless and does not constitute reversible error."); *Rivera-Reyes*, 252 S.W.3d at 788 (deeming admission of hearsay statement harmless when other evidence that did not draw an objection proved the same thing).

Baez's second issue is overruled.

## IV. CONFRONTATION CLAUSE

In his third issue, Baez argues that the trial court erred in admitting E.C.'s "out-of-court testimonial statements." Baez does not complain or point us to any specific "testimonial statements" relevant to his third issue; rather, he generally

argues that "the SANE report and Memorial Hermann Southwest medical records" violated the Confrontation Clause because they included testimonial statements by E.C., and E.C. did not testify at Baez's trial.

"Under the Confrontation Clause of the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (quoting *Pointer v. Texas*, 380 U.S. 400, 403 (1965)); *see* U.S. CONST. amend. VI. We address a Confrontation Clause challenge by asking: (1) whether the defendant had a prior opportunity to cross-examine the absent declarant, and (2) whether the statement at issue is testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Coronado v. State*, 351 S.W.3d 315, 323 (Tex. Crim. App. 2011).

As a preliminary matter, however, we consider whether Baez preserved this argument for our review through a proper objection at the trial court and by obtaining a ruling on that objection. *See Sanchez v. State*, 595 S.W.3d 331, 336 (Tex. App.—Houston [14th Dist.] 2020, no pet.). To preserve error, the objection must be timely and specific enough to make the trial court aware of the objection, unless the ground is implied by the context of the objection. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a); *Sanchez*, 595 S.W.3d at 336.

As noted above, Baez did not object to the admission of complained-of exhibits on the basis of the Confrontation Clause. Instead, when the trial court inquired whether Baez had any additional objections to the exhibits after defense counsel objected on the basis of hearsay, defense counsel responded "[t]hat's it." And defense counsel's subsequent statement that "it is my understanding that the complainant is unavailable" did not appraise the trial court or the State that Baez was objecting to the admission of the exhibits on the basis of a Confrontation

12

Clause violation. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (concluding that defendant's "arguments about hearsay did not put the trial judge on notice that he was making a Confrontation Clause argument" and concluding that appellant waived the Confrontation Clause argument because "the trial judge never had the opportunity to rule upon this rationale"). For these reasons, we conclude that Baez's complaint has been waived. *See* Tex. R. App. P. 33.1(a)(1)(A) (providing that, to preserve error for appellate review, the record must show that the complaint was made to the trial court by a timely objection "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) ("When the objection is not specific, and the legal basis is not obvious, it does not serve the purpose of the contemporaneous-objection rule for an appellate court to reach the merits of a forfeitable issue that is essentially raised for the first time on appeal."); *Luu v. State*, 440 S.W.3d 123, 127 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Even constitutional errors may be waived by failure to object at trial.").

We overrule Baez's third issue.

## V.   CONCLUSION

The judgment of the trial court is affirmed.

/s/      Margaret "Meg" Poissant
Justice

Panel consists of Justices Zimmerer, Poissant, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).