

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00219-CR
_____

**D'AUDRE RAASHAWN HIGHT-EALY, APPELLANT**

**V.**

**THE STATE OF TEXAS**

On Appeal from the 350th District Court
Taylor County, Texas,
Trial Court No. 12940-D, Honorable Thomas Wheeler, Presiding

February 3, 2023

## MEMORANDUM OPINION[1]

### Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, D'Audre Raashawn Hight-Ealy, and his buddies wanted "free weed," so they decided to steal some. During their efforts, one of the conspirators, whom Appellant knew to always carry a firearm and was awaiting a prison term for aggravated assault with a deadly weapon, shot and killed the victim. A jury convicted Appellant of aggravated

---

[1] Because this appeal was transferred from the Eleventh Court of Appeals, we apply its precedent consistent with principles of horizontal *stare decisis.* *See* TEX. R. APP. P. 41.3. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 254 (Tex. 2022).

robbery with a deadly weapon; punishment was assessed at forty years of confinement.

In a single issue, Appellant contends the State failed to present sufficient evidence to prove he should have anticipated the gun's use or exhibition.  We disagree, and affirm the trial court's judgment.

## Analysis

When we assess a criminal conviction for sufficiency of the evidence, we consider all the evidence in the light most favorable to the jury's verdict.  *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). The jury "is the sole judge of the credibility of the witnesses and of the strength of the evidence."  *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  If the evidence and reasonable inferences drawn therefrom would permit any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt, we are required to hold that the jury's verdict is supported by sufficient evidence.  *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014).

Under the circumstances in this case, aggravated robbery can be proven by evidence of: (1) a robbery, plus (2) use *or* exhibition of a deadly weapon.  *See* Tex. Penal Code Ann. § 29.03(a)(2).  Under the "law of parties," a party to a conspiracy to commit a felony can be guilty of another's felonious act "though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that *should have been anticipated* as a result of carrying out the conspiracy."  Tex. Penal Code Ann. § 7.02(b) (emphasis added).  It is not necessary for the State to prove that an individual in Appellant's position actually anticipated another would commit the secondary felony; it

2

need only show the criminal act "*should* have been anticipated." *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (emphasis in original). We examine the totality of the circumstances to determine whether, on the facts of this case, the shooter's use or exhibition of the firearm was "reasonably foreseeable" within the scope of the agreement to rob the victim. *Id.* (citing *Pinkerton v. United States*, 328 U.S. 640, 648 (1946)).

According to the trial evidence, in July 2017, Appellant, along with Jerel Mathis, Appellant's brother Jaquay, and D.J. West, decided to try to obtain "free weed." Appellant and West both handled a gun at Appellant's home. Appellant drove the men to visit their friend, Tylik Johnson, who directed them to the apartment of Bronson Boyles. Boyles had a reputation as a dealer in marijuana. According to Appellant's interview with police officers, the plan was to rob Boyles: "I'll go in [Boyles's home] and see how much he has and then I'll come out and we'll rob him." Appellant approached Boyles's apartment and knocked on the door while the others remained nearby.

Appellant, who identified himself as "Brandon," initially offered to purchase marijuana; Boyles replied he did not have enough and would need to go to a friend's apartment in the complex to find more. Once Boyles and Appellant left, they were joined by Appellant's four cronies. Apparently anticipating something amiss from the appearance of the other men, Boyles asked whether the men intended to rob him.

West attempted to grab Boyles; Boyles broke free and tried to flee.[2] West then

---

[2] At trial, Mathis said the gun was pulled because the two men "started tussling," but acknowledged he had told police that Boyles was shot while attempting to go through the window of an apartment.

3

shot Boyles at close range.[3]  Thereupon, Appellant returned his passengers to his home and returned with some cleaning spray.[4]  The next day, Boyles died of his injuries.

At the time of the robbery, West had a reputation for fighting.  Jaquay described West as being ruthless, was frequently seen in photos in possession of a gun, and was known to always carry a gun.  Appellant's interview with the police was consistent with his co-conspirators' depictions of West's reputation: he knew West regularly carried a gun, that West had been convicted of aggravated assault with a deadly weapon, "has a previous history of . . . robbing people," was wearing an ankle monitor at the time, and was awaiting the commencement of a ten-year prison term for his crimes.

On appeal, Appellant contends it is not reasonable to anticipate that West would use or exhibit a gun, reasoning anyone in Boyles's position would respond to the presence of five bandits by capitulating rather than fighting.  Appellant also theorizes that a planned drug robbery of the victim's person is different than holding up a business like a convenience or liquor store, where resistance is more likely.  We disagree with Appellant's position.  Guns and illegal drugs go together like, well, guns and illegal drugs.  The Texarkana Court of Appeals found the notion "obvious" that attempting to steal from a person's residence is likely to result in a confrontation "and that [] co-conspirators might react violently to that confrontation."  *Moore v. State*, 24 S.W.3d 444, 447 (Tex. App. – Texarkana 2000, pet. ref'd).  We think it to be equally obvious that one attempting to forcibly rob a reputed drug dealer would anticipate a confrontation, as well as a violent

---

[3] Susan Roe, M.D., of the Tarrant County Medical Examiner's office opined from her examination of Boyles that the muzzle of the gun was directly against the surface of Boyles's skin when the trigger was pulled.

[4] The gun was later found in a backyard shed at the home of Appellant's mother.

4

response by co-conspirators at the scene. Based on all the evidence, the jury could rationally conclude Appellant (1) planned a robbery with his friends; (2) handled a gun with West before the robbery; (3) knew West always carried a gun; (4) knew of West's prior assaults on others with a deadly weapon; (5) drove West and other companions to commit the robbery; and (6) planned a course of events where Boyles would personally encounter West during the robbery. This constitutes more than sufficient evidence for any juror to conclude that West's use or exhibition of a firearm was "reasonably foreseeable" during the conspiracy to rob Boyles. *See Anderson*, 416 S.W.3d at 889. *See also, e.g., Johnson v. State*, 421 S.W.3d 893, 898–99 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (evidence that co-conspirator was armed with a gun before the robbery held sufficient to demonstrate defendant should have anticipated the possibility of murder); *Love v. State*, 199 S.W.3d 447, 453 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) ("Evidence that a defendant knew his co-conspirators might use guns in the course of a robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery."). Appellant's single issue is overruled.

Conclusion

The judgment is affirmed.

Lawrence M. Doss
Justice

Do not publish.

5