

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00263-CR

**TRENTON EUGENE SINYARD,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 40346CR

## MEMORANDUM OPINION

Trenton Eugene Sinyard was convicted of Burglary of a Habitation, enhanced, and sentenced to 99 years in prison. *See* TEX. PENAL CODE ANN. §§ 30.02, 12.42(b); 12.32 (West 2011). Because the evidence was sufficient to support the conviction, the trial court did not abuse its discretion in admitting extraneous offense evidence, and Sinyard's complaints regarding his punishment were not preserved, the trial court's judgment is affirmed.

BACKGROUND

Jennifer Lucas was working at home when around noon, someone rang her front doorbell. She did not answer it. A moment later, the doorbell rang again. When she investigated, she saw the shadow of someone walking by the front windows where there were flower beds. She went to the French doors at the back of her house and closed the blinds so no one would see her. Moments later, she heard someone "trying" the back French door handle and pushing on the door. She retrieved her handgun from a safe and called the Sheriff's Department. While she was on the phone, she heard a loud bang, the door flung open, and a person stumbled in through the doorway. Lucas did not recognize the intruder and started shooting at him.

When deputies arrived, they followed a trail of blood from Lucas's back door to her gate. A canine unit followed a scent then to the house next door, first to a separate "mother-in-law" house at the back. There was blood on the door and below a hamper inside. Believing the intruder was hiding in the main house,[1] deputies called on the fire department to use heat-sensing technology and found Sinyard hiding in a wall. He had used a "scuttle hole" in the attic to reach the area where he was hiding. When he was removed from the area, he was wearing shorts; but a pair of bloody jeans and a bloody t-shirt were found in the area. He had a wound to the back of his head and to his left back/shoulder area.

---

[1] The house belonged to Sinyard's sister, and Sinyard lived there.

**SUFFICIENCY OF THE EVIDENCE**

In his first issue, Sinyard contends the evidence is insufficient to support his conviction. Specifically, he argues the evidence showed there was no entry into the home and no intent to commit theft.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Section 30.02 of the Texas Penal Code provides, as relevant to this case, that a person commits an offense if, without the effective consent of the owner, he enters a habitation, with intent to commit theft. *See* TEX. PEN. CODE ANN. § 30.02(a)(1) (West 2011). "Enter" means to intrude any part of the body, or any physical object connected with the body. *Id*. (b).

Sinyard contends the evidence did not show he "entered" Lucas's house because, he asserts, the record reflects Lucas shot through the door before Sinyard opened it. Sinyard contends that: 1) Lucas told the 9-1-1 operator that as Sinyard started opening the back door, Lucas started shooting; 2) when law enforcement interviewed him after he was retrieved from his hiding place, Sinyard stated that while he was banging on the back door, someone started shooting; 3) there was no damage to the receiver plate for the deadbolt, if it was engaged; and 4) the damage to the door and sheetrock beside the door

indicate the door was shut when Lucas began shooting.

However, the evidence shows that Lucas also told the 9-1-1 operator that Sinyard "came in" and Lucas started shooting. Lucas testified that the back door opened forcefully and a person stumbled in sideways. The intruder's upper body and left foot were in the house, and she started shooting. He did not leave right away but used the door as a shield and pulled it closed. Lucas further stated that the deadbolt for the door was engaged, but the pin in the bottom of the other door of the two French doors may not have been engaged in the floor. Thus, she explained, without the bottom pin engaged, there would be a lot of flex in the doors. Also, she and Sgt. Fitzgerald, an investigator with the Ellis County Sheriff's Department, noted that the receiver plate in the second door had moved some. Through photographs admitted into evidence, Sgt. Fitzgerald noted that the outside of the door was also damaged, indicating that it was open during the shooting.

The jury was not required to believe Sinyard's statements to law enforcement that he was shot before the door was opened. And, viewing all of the evidence in the light most favorable to the verdict, we determine any rational trier of fact could have found that Sinyard entered Lucas's house beyond a reasonable doubt.

Sinyard also contends the evidence was insufficient to prove that he had the intent to commit theft. Although not immediately, Sinyard left Lucas's home after Lucas started shooting at him. He hid in a crawl space in his sister's home next door after taking off

his bloody clothes. When retrieved by law enforcement after the incident, Sinyard offered an explanation as to why he was at Lucas's home—that he was looking for his dog. Lucas testified that the dog roams the area but has never been taken into her house. A dog was located in the bathroom of the house where Sinyard was located. Further, two prior burglary of a habitation convictions for Sinyard were admitted into evidence as support for the element of intent. *See* TEX. R. EVID. 404(b)(2) ("…evidence may be admissible for another purpose, such as proving…intent….").

Based on this record, we determine that any rational trier of fact could reasonably find beyond a reasonable doubt that Sinyard entered Lucas's home with the intent to commit theft. *See id*.; *see also Gear v. State*, 340 S.W.3d 743, 747-48 (Tex. Crim. App. 2011) (evidence can be sufficient to prove intent to commit theft where a defendant attempts to enter a home, flees when interrupted by the homeowner, and gives conflicting or implausible explanation for his actions).

Accordingly, Sinyard's first issue is overruled.

## EXTRANEOUS OFFENSES

In his second issue, Sinyard complains about the introduction of two extraneous offenses during the State's case in chief. During Sgt. Fitzgerald's testimony, the State sought to introduce three prior burglary convictions listed in the State's notice to Sinyard of its intent to introduce extraneous offenses to rebut Sinyard's defensive theory that he had no intent to commit theft. One conviction was for "simple burglary" from Louisiana.

The other two were for burglary of a habitation, both occurring in Ellis County, Texas. After a hearing outside the presence of the jury, the trial court admitted the two Ellis County convictions. Sinyard contends the trial court abused its discretion in admitting those two prior convictions in violation of Rules of Evidence 404(b) and 403.

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

Rule of Evidence 404(b) generally provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, the evidence may be admitted for another purpose, such as to prove the defendant's intent, plan, preparation, or other state of mind. *Id*. (b)(2). Further, admitting evidence of extraneous offenses is permissible "to rebut a defensive issue that negates one of the elements of the offense." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Hinojosa v. State*, 554 S.W.3d 795, 798 (Tex. App.—Waco 2018, no pet.).

Nevertheless, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. But this rule favors the admission of relevant evidence, and such evidence is presumed to be more probative than prejudicial. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006); *Majors v. State*, 554 S.W.3d 802, 808 (Tex. App.—Waco 2018, no pet.). An analysis under Rule 403

includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012).

One of Sinyard's defensive theories at trial was that he did not intend to commit theft—he was simply looking for his dog. Sinyard hinted during voir dire and opening that there was a problem with the State's ability to prove the element of intent. He fully raised the "looking for my dog" theory on re-cross examination of Lucas where Sinyard's counsel told Lucas:

> What really happened out there that day was that somebody came to your backdoor. Let's just say, Mr. Sinyard. He was knocking on the backdoor, there on a legitimate purpose, trying to find his dog. He was knocking on the backdoor because he had already knocked on the front door and rung the doorbell. Came to the backdoor and knocked on the backdoor, and the backdoor came open and you shot him.

Accordingly, Sinyard placed his intent at issue and thus, the trial court did not abuse its discretion in admitting the two prior convictions over Sinyard's Rule 404(b) objection.

Sinyard also contends that the convictions were extremely prejudicial and their probative value was minimal. *See* TEX. R. EVID. 403. All testimony and physical evidence will likely be prejudicial to one party or the other. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value, in other words, the evidence is unfairly prejudicial, that Rule 403 is applicable. *Id.*; *see Montgomery v. State*, 810 S.W.2d

372, 389 (Tex. Crim. App. 1991, op. on rhg).

Sinyard's prior convictions for burglary of a habitation seven years prior to his trial strengthens the inference that he entered Lucas's home with the intent to commit theft, especially in light of Sinyard's defense that he was only looking for his dog. Thus, the evidence was necessary and probative. The presentation of the convictions did not consume an inordinate amount of time and was not repetitive of evidence already admitted. The jury was instructed that it could not consider the evidence for any purpose other than to determine Sinyard's intent. While the admission of prior convictions will always be prejudicial, there was nothing here that suggested the jury would be distracted from the main issue or use the evidence for an improper purpose.

Based on our review of the record, the trial court, after balancing the various Rule 403 factors, could have reasonably concluded that the probative value of the convictions was not substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court did not abuse its discretion in admitting the two burglary of a habitation convictions into evidence over Sinyard's Rule 403 objection.

Sinyard's second issue is overruled.

**SENTENCE**

In his last two issues, Sinyard contends that his 99-year sentence was excessive and disproportionate to the crime and inappropriate under the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Texas Constitution. *See* U.S.

CONST. amend. VIII; *see also* TEX. CONST. art. I, § 13.

A disproportionate-sentence claim must be preserved for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986) (en banc); *see also Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). At trial, Sinyard's counsel did not object to the imposed sentence. Further, Sinyard did not complain about the imposition of his sentence in his motion for new trial or otherwise present an objection to the imposed sentence. Thus, Sinyard's complaints in these two issues are not preserved.

Sinyard's third and fourth issues are overruled.

**CONCLUSION**

Having overruled each issue presented on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Senior Justice Scoggins[2]
Affirmed
Opinion delivered and filed February 27, 2019
Do not publish
[CRPM]



---

[2] The Honorable Al Scoggins, Senior Justice of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003 (West 2013).