

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00200-CR

_____

LAWRENCE VANTRESS WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 18-0146X

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

A Harrison County jury found Lawrence Vantress Williams guilty of theft of aluminum and copper valued at less than $20,000.00. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(F). The trial court then sentenced Williams to twenty-one months' confinement in state jail.

In his sole point of error on appeal, Williams argues that the evidence is legally insufficient to support the jury's verdict of guilt. Because we find the jury's verdict supported by legally sufficient evidence, we affirm the trial court's judgment.

## I.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while deferring to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Here, the theft involved components removed from an air-conditioning unit at an apartment complex located on Grove Street in Marshall, Texas. In alleging that Williams stole these materials, the State's indictment claimed he "unlawfully appropriate[d], by acquiring or otherwise exercising control over, property, namely aluminum and copper, of the value of less than $20,000, from Moonracer Rentals 1 LLC . . . without the effective consent of the owner, and with intent to deprive the owner of the property." Pursuant to its indictment, the State needed to prove that (1) Williams (2) appropriated copper or aluminum (3) valued at less than $20,000.00 (4) without the effective consent of the owner, Moonracer Rentals 1 LLC, (5) with intent to deprive it of the copper and aluminum. *See* TEX. PENAL CODE ANN. § 31.03(a), (b)(1). Williams argues that the evidence was legally insufficient to support the jury's finding of guilt because nothing showed that he appropriated the air-conditioning components or that they contained copper or aluminum.

## II. The Evidence at Trial

Tajuana Smith testified that, as she was driving out of the apartment complex on the day of the theft, she saw Williams in the proximity of the outdoor air-conditioning unit meant to cool "Apartment B," which had been unoccupied for two to three weeks. Smith said that "nobody [was] supposed to be there" and that she decided to circle back to the area after exiting the complex to make sure Williams was not stealing anything. As she drove back, Smith noticed that the air-

conditioning unit was torn apart and that Williams, who was wearing a red Chicago Bulls jersey, was getting into a white Ford Expedition.[1] She reported the incident to the apartment complex's management company, Century 21 Select Group.[2]

Michael Maguire, an officer with the Marshall Police Department (MPD), arrived at Century 21's office and learned that components from the Luxaire brand air-conditioning unit serving "Apartment B" were stolen. Maguire testified that the suspect was described as an African-American male wearing a red shirt and driving a white Ford Expedition with rims. Due to the nature of the materials stolen, Maguire went to the nearest salvage yard to investigate.

Maguire's interview with Tony Pearson, an employee of Texas Scrap & Salvage yard, revealed that a person matching the suspect's description came to the scrap yard twice on the afternoon of the theft while driving a white Ford Expedition. The scrap yard's customer records included a copy of Williams' driver's license and showed that the scrap yard paid Williams $27.00 for twenty-seven pounds of "Alum Cop Rad/fe." Pearson provided Maguire surveillance footage of Williams' visit. The surveillance footage showed Williams wearing the red Chicago Bulls jersey. Pearson also testified that the items sold by Williams included an "aluminum/copper condenser off of a central air conditioning unit," an air-conditioning cooler and radiator, and an

---

[1]Smith said she could not see the small object Williams was carrying because his hand was "balled up."

[2]Century 21 was hired by the apartment's owner, Moonracer Rentals 1, LLC, to manage the Grove Street apartment complex.

4

aluminum topper. Pearson opined that the aluminum and copper materials were removed from an air-conditioning unit with a set of bolt cutters.[3]

James Wayman, a detective with the MPD, arrested Williams after he saw him driving the white Ford Expedition. He then summoned Smith, who selected Williams as the thief from a photographic lineup.[4] Century 21's owner, Brad Burris, testified that he had the authority to act on behalf of Moonracer, but did not authorize anyone to work on the air-conditioning unit. Burris said the cost to replace the unit was around $2,400.00. According to Burris, Williams had not rented a property managed by Century 21.

After hearing this evidence and watching the surveillance footage, the jury convicted Williams of the theft.

## III.    Analysis

"A case based on circumstantial evidence is built brick by brick; the burden to build the wall called 'beyond a reasonable doubt' is met after a sufficient number of evidentiary bricks have been laid." *Woods v. State*, No. 06-15-00063-CR, 2015 WL 10038329, at *2 (Tex. App.—Texarkana Dec. 29, 2015, pet. ref'd) (mem. op., not designated for publication). In determining whether the State met this burden, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v.*

---

[3]According to Pearson, it would take between two to ten minutes to break down an air-conditioning unit, depending on the materials used.

[4]During cross-examination, Wayman testified that Williams had tattoos down both arms, but the man on the surveillance footage did not. Smith also testified she saw no tattoos on the suspect.

*State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is unnecessary that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Williams did not rent an apartment from Moonracer, but Smith witnessed him in the proximity of the air-conditioning unit outside "Apartment B." Smith knew Williams was not supposed to be there and returned right after leaving the apartment complex to make sure he was not stealing anything. She also noticed that the air-conditioning unit was torn apart and that Williams was still on the scene in a red Chicago Bulls jersey next to a white Ford Expedition.

The evidence also showed that, on the same day as the theft, Williams sold scrap air-conditioning unit parts to the nearest scrap yard while wearing a red Chicago Bulls jersey and driving a white Ford Expedition. Pearson testified, and photos of the scrapped material showed, that the parts contained aluminum and copper. Receipts showing the scrap yard's payment to Williams established that the value of the materials was under $20,000.00.

We conclude that the inferences necessary to establish that Williams was the perpetrator of the charged crime were reasonable "based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 902–03

6

(Tex. Crim. App. 2012). We therefore find the evidence legally sufficient to support the jury's finding of guilt and overrule Williams' sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.


Scott E. Stevens
Justice


Date Submitted:   June 24, 2019
Date Decided:    June 26, 2019

Do Not Publish