# Court of Appeals
## Tenth Appellate District of Texas

---

10-23-00357-CR

---

Marcus Dewayne Joshua,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
87th District Court of Leon County, Texas
Judge Deborah Oakes Evans, presiding
Trial Court Cause No. 21-0005CR

---

JUSTICE HARRIS delivered the opinion of the Court.

## MEMORANDUM OPINION

Marcus Dewayne Joshua was convicted of capital murder and sentenced to life in prison without parole. *See* TEX. PENAL CODE §§ 19.03(a)(2); 12.31(a)(2). Because the evidence is sufficient to support Joshua's conviction as a party to the offense and because the trial court did not err in failing to suppress Joshua's statements to two different law enforcement officers, the trial court's judgment is affirmed.

## BACKGROUND

Bobby Lopez met Brandon Hollis while in juvenile detention. Hollis introduced Lopez to Lavarrion Young. In late 2020, Hollis asked Lopez if he was interested in "trying to get some money." Lopez agreed before knowing how Hollis planned to get the money.

On December 5, 2020, Hollis introduced Lopez to Joshua. That same day, Joshua drove Hollis, Lopez, and Young to Normangee, Texas, in Joshua's green Dodge Charger. At the home of Larry Green, they began to plan a robbery. Part of that planning involved removing the license plates from Joshua's car. The group discussed the robbery, and Lopez volunteered to be the gunman. Joshua made a gun available to Lopez. Joshua then drove Lopez, Young, and Hollis to the home of Lloyd Anderson, an 86-year-old owner of rental property, while Green lead the way in another car. When they arrived at Anderson's home, Joshua and Green called off the plan for that day.

The following day, December 6th, Joshua drove the same car to pick up Lopez. Hollis was also riding with Joshua. Joshua then drove to pick up Young. Next, they stole a car to use in the robbery. Hollis drove that car back to Normangee with Young as a passenger, followed by Joshua in his car with Lopez as a passenger. They met at Green's home. Joshua followed Lopez, Young, and Hollis, who were in the stolen car, to Anderson's home. Lopez

again had a gun which Joshua made available to him. The plan was to rob Anderson at gunpoint.

At the house, Lopez held Anderson at gunpoint. But when Anderson reached for something, Lopez shot him multiple times. As Lopez, Young, and Hollis were trying to leave after the shooting, the stolen car became stuck in Anderson's yard. Joshua picked up Lopez, Young, and Hollis in Joshua's car and fled the scene. Law enforcement were soon in pursuit, with DPS Trooper David Moore in the first patrol unit behind Joshua. Joshua ultimately veered right during the high-speed chase and hit a tree. He was trapped in the car. Young and Lopez were ordered out of the car and on the ground by Trooper Moore. They were handcuffed and eventually arrested. Hollis fled the accident on foot. He was eventually arrested as well. Joshua was transported to a hospital in Waco, Texas once he was extracted from his car. He gave a statement to both Trooper Moore at the scene of the wreck and to Investigator Don Craft at the hospital.

Anderson died from his gunshot wounds after paramedics arrived at his house but before he could be life-flighted to a hospital.

SUFFICIENCY OF THE EVIDENCE

In his first issue on appeal, Joshua contends the evidence is insufficient to support his conviction as a party to the offense. Specifically, he contends

the evidence was insufficient to prove he encouraged, promoted, or assisted

Lopez in committing capital murder or to prove he should have anticipated a

murder would occur by engaging in a conspiracy to commit robbery.

### *Standard of Review*

The Court of Criminal Appeals has expressed our standard of review of

a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial

evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

### Law of Parties

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE § 7.01(a). Each party to an offense may be charged with commission of the offense, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice. *Id.* (b), (c).

A person may be liable as a party to the offense pursuant to two statutory theories: as someone who is criminally responsible for an offense committed

by another under Texas Penal Code section 7.02(a)(2) or as someone who is a conspirator to a felony and a different felony is committed under Texas Penal Code section 7.02(b). TEX. PENAL CODE § 7.02(a)(2), (b). The charge in this case authorized the jury to convict Joshua of capital murder under either theory. The jury was not required to be unanimous on which theory applied to Joshua because party liability is not an element of the offense. *See Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011). Consequently, Joshua's conviction can be affirmed if the evidence is sufficient under either theory. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) ("[W]hen the jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld."); *see also Hernandez v. State*, No. 05-22-00419-CR, 2024 Tex. App. LEXIS 7043, at *21 n.9 (Tex. App.—Dallas Sep. 30, 2024, pet. ref'd) (not designated for publication) ("Because we conclude that the evidence was sufficient to support appellant's conviction as a conspirator under the party-liability theory set forth in Section 7.02(b), we do not opine as to the sufficiency of the evidence with respect to Section 7.02(a)(2).").

Joshua contends the evidence is insufficient under either theory of party liability. For the reasons explained below, because the evidence is sufficient to support Joshua's conviction as a party under section 7.02(b), we need not reach

the issue of whether the evidence is sufficient to support Joshua's conviction as a party under section 7.02(a)(2).

### *Conspiracy*

Section 7.02(b) of the Texas Penal Code provides:

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE § 7.02(b).[1]

It is well-settled that a defendant can be found guilty of capital murder as a party pursuant to section 7.02(b). *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) ("A person can be convicted of capital murder as a party to the offense, without having had the intent to commit the murder."); *Valle v. State*, 109 S.W.3d 500, 503-04 (Tex. Crim. App. 2003) ("A defendant may be convicted of capital murder under § 7.02(b) without having the intent or actual anticipation that a human life would be taken."); *see also Pollard v. State*, 392 S.W.3d 785, 800 (Tex. App.—Waco 2012, pet. ref'd).  Therefore, if the evidence demonstrates that a defendant conspired to commit robbery and, during the robbery, one of the co-conspirators commits capital murder, the

---

[1] Because the offense was committed before the 2023 amendment to subsection (b), we use the law in effect at the time the offense was committed.  *See* Acts 2023, 88th Leg., Ch. 735 (HB 2961), § 2.

defendant can be held criminally responsible for capital murder if it was in furtherance of the conspiracy's unlawful purpose and should have been anticipated. *See Martinez*, 330 S.W.3d at 901; *Pollard*, 392 S.W.3d at 801. Further, a conspirator should have anticipated a murder would occur if he knew a co-conspirator was carrying a gun. *Pollard*, 392 S.W.3d at 801.

### *Evidence*

Joshua does not dispute that there was a conspiracy to commit the felony offense of robbery. The record shows that Lopez was acting in furtherance of that offense when he shot Anderson. He testified that he went into Anderson's office and "stuck him up." When Anderson reached for "something," Lopez told him to stop or he would shoot. Lopez confirmed he pointed the gun at Anderson and intentionally "fired that gun multiple times[.]"

Further, the record shows that Joshua should have anticipated the commission of a murder during the planned robbery. Lopez testified that he volunteered to be the "gunman" for the robbery. He acquired a handgun from Joshua not once, but twice: once on December 5, 2020, the original day set for the robbery which was then called off; and once on December 6, 2020, the day that Anderson was killed. Both times, Lopez rode to Anderson's house in Joshua's car with Joshua driving and retrieved the gun from the console of Joshua's car. After the cancelled robbery attempt on December 5th, Lopez gave

the gun back to Joshua.  He retrieved a different gun from Joshua's console on December 6th.  By providing a gun to the volunteered gunman to be used in the planned robbery, Joshua should have anticipated that a murder would occur.

Joshua, however, argues that Lopez's "independent impulse" in committing the murder negates Joshua's culpability and leaves Lopez as solely responsible for committing capital murder.  Because "independent impulse" is not an enumerated defense in the Penal Code, an instruction on "independent impulse" would not be a part of the charge to the jury.  *See Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001).  Thus, our review of the sufficiency of the evidence under a hypothetically correct jury charge would not include a review of Joshua's defensive theory of "independent impulse."

### *Conclusion*

After reviewing the evidence in the light most favorable to the verdict and as defined by a hypothetically correct jury charge for the case, any rational trier of fact could have found beyond a reasonable doubt that Joshua was a party to capital murder under Texas Penal Code section 7.02(b), and thus, the evidence was sufficient to support his conviction.

Joshua's first issue is overruled.

**MOTION TO SUPPRESS**

In his second issue, Joshua complains that the trial court erred in failing to suppress his oral statements made at the scene of the crash and in the hospital. Specifically, he contends his statements at the crash scene were a product of a custodial interrogation without being warned of or waiving his rights in violation of both *Miranda*[2] and article 38.22 of the Texas Code of Criminal Procedure. He also complains his statements made at the hospital were not voluntary because he did not voluntarily waive his rights in violation of *Miranda*.

Joshua filed a general pretrial motion to suppress "all written and oral statements made by [Joshua] and any testimony by [ . . ] law enforcement officers or others concerning such statements." The motion did not include any description of the specific statements or the facts surrounding the statements. The trial court held a pretrial hearing on the motion where the State called Trooper David Moore to testify about his interaction with Joshua after Joshua's car crashed into a tree and Leon County Sheriff's Office Investigator Don Craft who testified about interviewing Joshua at a hospital in Waco after the crash. Joshua did not testify. At the conclusion of the hearing, the trial court denied the motion to suppress.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Although the trial court made some oral findings and conclusions after denying the motion to suppress, this Court abated this appeal so that the trial court could make written findings and conclusions regarding both complained-of statements. In its written findings and conclusions, the trial court concluded that Joshua was not in custody at the scene of the crash but that he was in custody when he made statements at the hospital. The trial court also concluded that Joshua voluntarily waived his constitutional and statutory rights, and thus, his statements to Craft were voluntary.

### Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review that gives almost total deference to the trial court's determination of historical facts that the record supports and considers *de novo* the application of the law to the facts. *State v. Pettit*, No. PD-0186-24, 2025 Tex. Crim. App. LEXIS 344, at *7 (Tex. Crim. App. May 28, 2025) (publish). We defer to the trial court's findings unless they are unsupported by the record and view the evidence in the light most favorable to the trial court's ruling. *Id*. at *7-8. The trial court's ruling must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023).

### *Statements at the Scene of the Crash*

The only specific question Joshua complained about at trial and complains about on appeal is the question by Trooper Moore, "Why are you running from the highway patrol?" Joshua contends he was in custody when this question was asked; and thus, because he was neither warned of nor waived his constitutional or statutory rights, his statements in response to this question could not be admitted in his trial.

Both Federal and State law allow the admission of a statement that does not stem from custodial interrogation. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Further, the interpretation of whether someone is in custody is the same under *Miranda* as it is under article 38.22. *Id.* "[A] person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Id.* at 525 (quoting *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)). A custody inquiry also includes an examination of all of the objective circumstances surrounding the questioning. *Id.* (citing *Stansbury v. California*, 511 U.S. 318, 322-23, 325, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994)). The subjective belief of the interrogating officer does not factor into a custody determination unless the officer's subjective belief was somehow conveyed to the person being questioned.

A trial judge's ultimate custody determination "presents a 'mixed question of law and fact.'" *Id*. at 526. Therefore, we afford almost total deference to a trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Id*. at 526-527. Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial judge's custody determination *de novo*. *Id* at 527.

In this case, law enforcement was involved in a high-speed chase of a green Dodge Charger seen previously at the scene of a murder. When the vehicle passed Trooper Moore going the opposite direction, Moore pulled in behind the vehicle and tried to catch up to it. Ultimately, the vehicle veered to the right and crashed into a tree. Moore saw the crash and arrived at the scene moments later. He ordered the occupants to exit the vehicle and lay on the ground. Two complied. The driver, Joshua, did not.[3] He was pinned in the vehicle.

The trial court made the following factual findings which did not turn on credibility and demeanor and are supported by the record:

> When Trooper Moore approached the vehicle, he made statements to Defendant including: "We got help coming for you," asking if he could slide out of the car, and "what happened?" In response to the question "what happened," Defendant responded: "they did this." Several minutes later, while waiting for a crew to remove Defendant from the car, Moore asked, "Why are you running from

---

[3] A fourth occupant had already run away.

the highway patrol?" to which Defendant responded, "they made me."

Trooper Moore did not tell Defendant that he was under arrest but did detain another occupant of the car. Trooper Moore did not advise Defendant of his rights as set out in article 38.22 section 2 of the Code of Criminal Procedure.

The trial court concluded that Joshua was not in custody within the meaning of article 38.22 of the Code of Criminal Procedure or the United States Constitution when he spoke to Trooper Moore because Joshua's freedom of movement was not restricted by Moore.

After reviewing the record and the trial court's custody determination *de novo*, we conclude Joshua's freedom was not restrained due to anything associated with a formal arrest and he was not in custody. Although Moore testified at the suppression hearing that Joshua was not free to leave, his subjective belief does not factor into the custody determination because he did not convey his belief to Joshua. Accordingly, the trial court did not err in determining Joshua was not in custody when he answered Moore's question. Because he was not in custody, we need not address Joshua's other complaints regarding his statements at the scene of the crash.

### *Statements in the Hospital*

Next, Joshua asserts that his waiver of his *Miranda* rights was involuntary because he was medicated and in the hospital, and thus, his

statements to Craft were also involuntary.

Constitutional confession claims are also evaluated under a bifurcated standard with questions of historical fact and questions that turn on credibility and demeanor being reviewed with deference to the trial court's ruling and application-of-law-to-fact questions that do not turn on credibility and demeanor being reviewed *de novo*. *Sandoval v. State*, 665 S.W.3d 496, 515 (Tex. Crim. App. 2022).

Generally, it is the State's burden to establish a valid waiver of *Miranda* rights by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S. Ct. 515, 93 L. Ed. 3d 473 (1986); *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). But before it may be said that a waiver of a person's *Miranda* rights is involuntary, there must be some element of official intimidation, coercion, or deception. *Leza,* 351 S.W.3d at 349; *see Connelly*, 479 U.S. at 169-70; *Oursbourn v. State*, 259 S.W.3d 159, 170 (Tex. Crim. App. 2008). "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Connelly*, 479 U.S. at 170.

Regarding the voluntariness of Joshua's waiver, the trial court found that:

- the admonishments were read to Joshua from a printed card, not from memory; and

- Joshua indicated that he understood each of the rights read to him and agreed to speak to Investigator Craft;

The record supports these findings.

The trial court then concluded that:

- although in the hospital, Joshua was capable of understanding the admonishments given to him by Craft;

- the admonishments given satisfied the requirements of *Miranda v. Arizona*; and

- Joshua knowingly and voluntarily waived his constitutional rights and he voluntarily gave statements to Craft.

The record supports the trial court's conclusions.

Joshua does not contend, nor does the record demonstrate, that Craft intimidated, coerced, or deceived him in any manner. He does not claim that Craft threatened or injured him during the interrogation, that Craft deprived him of sleep or food, or that Joshua was in any way fearful due to any alleged misconduct. Further, the record does not show Joshua was "lashed" to the hospital bed as he contends or what medication he was being given.

What the record shows is that Joshua was able to communicate with Craft, Craft read Joshua his rights, Joshua affirmatively stated he understood each right as it was read to him, and Joshua readily agreed to talk to Craft about "what happened today." Joshua even continued talking to Craft after Craft said he was finished asking questions. No evidence in the record

indicated that Joshua was coerced, intimidated, or forced to make any statement. *See Contreras v. State*, 312 S.W.3d 566, 574 (Tex. Crim. App. 2010) ("A statement is obtained in violation of constitutional due process only if the statement is causally related to coercive government misconduct."). Thus, no evidence in the record shows, or even suggests, that Joshua's waiver of his rights was constitutionally involuntary.

Accordingly, after reviewing the record and the trial court's voluntariness determination *de novo*, we conclude Joshua voluntarily waived his *Miranda* rights, and thus, his statements to Investigator Craft were also voluntary.

Joshua's second issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's judgment.

LEE HARRIS
Justice

OPINION DELIVERED and FILED: July 10, 2025

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
Do Not Publish
[CRPM]

