# Court of Appeals
## Tenth Appellate District of Texas

10-23-00231-CR

Luckus Baines Moore,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
19th District Court of McLennan County, Texas
Judge Thomas C. West, presiding
Trial Court Cause No. 2019-1762-C1

JUSTICE HARRIS delivered the opinion of the Court.

## MEMORANDUM OPINION

Luckus Baines Moore was convicted of seven counts of Aggravated Sexual Assault of a Child and two counts of Sexual Assault of a Child. *See* TEX. PENAL CODE §§ 22.021, 22.011. He was sentenced to life in prison in Counts I through VII and 20 years in prison in Counts VIII and IX. Because Moore did not show trial counsel rendered ineffective assistance and because the evidence

was sufficient to support Moore's convictions, the trial court's judgments are affirmed.

**BACKGROUND**

Kim Clark, a retired detective who worked for the Waco Police Department, received a walk-in report on May 10, 2013, which was taken by another officer. T.M. and her sister made the report. T.M. was 19 years old at the time she made the report. The report alleged that Moore, T.M.'s father, was sexually abusing both T.M. and her sister. T.M. reported the abuse to her occurred two to three times a week. T.M. also reported she had an abortion at 16 years of age and 17 years of age, and both of the aborted babies belonged to Moore. Clark interviewed both T.M. and her sister regarding their reported sexual abuse.

While investigating the report, Clark discovered a 1997 police report where the Waco Police Department investigated an injury to a child case involving T.M. A class C ticket for assault was given to Moore for bruises T.M. had on her thighs. T.M. recanted when a child protective services caseworker told T.M. and her parents that T.M. and her siblings would be separated and placed in foster care and then confronted T.M., in front of her parents, about the truthfulness of the allegations. Clark also discovered a 1998 Waco Police report where T.M. made an outcry to a counselor at school alleging T.M. was

being sexually abused by Moore. During that investigation, the Waco Police Department decided to send T.M. to the advocacy center for a forensic interview. During the forensic interview, T.M. disclosed the sexual abuse she endured by Moore, suicidal ideations, self-mutilation, eating disorders, and sleep disorders. T.M. was taken to a behavioral health center for mental health treatment. At the time of her present investigation, Clark subpoenaed the center's records, but the records had been destroyed.

Also during her investigation, Clark discovered a 2006 Waco Police report where T.M. called 911, herself, for attempting suicide. T.M. was taken to a behavioral health center again for mental health treatment. During her stay there, T.M. again disclosed the sexual abuse she endured by Moore. The 2006 case and report had been assigned to a detective, and during that detective's investigation, T.M. recanted her allegations against Moore. Clark then discovered yet another report, made in 2012, that Moore had sexually abused T.M. Nothing happened with that report.

Moore was arrested concerning the present case in early December of 2014. T.M.'s sister recanted her outcry of sexual abuse soon after Moore's arrest and after T.M.'s brother threatened their sister and mother. At some point, Moore was indicted for sexual abuse. Moore was then reindicted in September of 2019. In December of 2020, the case was transferred to a

different trial court. The trial began in June of 2023.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, Moore contends trial counsel was ineffective in failing to provide the trial court with a specific exception to the State's hearsay objection to a defense witness's testimony. This issue is raised for the first time on appeal.

Claims of ineffective assistance of counsel must be firmly rooted in the record. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004). Thus, trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Johnson*, 624 S.W.3d at 586; *Rylander*, 101 S.W.3d at 110-11; *Thompson*, 9 S.W.3d at 814. Thus, if the record does not contain affirmative evidence of trial counsel's

reasoning or strategy, we presume counsel's performance was not deficient. *Johnson*, 624 S.W.3d at 586; *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

Here, the record is silent as to why trial counsel did not provide the trial court with a specific exception to the State's hearsay objection. Accordingly, we presume counsel's performance was not deficient.

Moore's first issue is overruled.

SUFFICIENCY OF THE EVIDENCE

In three issues, Moore next challenges the sufficiency of the evidence to support his convictions under Counts I-VII (Issue II), Counts VIII and IX (Issue III), and Count X (Issue IV). Specifically, he contends T.M.'s testimony regarding the instances of sexual abuse by Moore is not credible.

### *Standard of Review*

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at

319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson,* 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Further, convictions for sexual assault of a child and aggravated sexual assault of a child are supportable on the uncorroborated testimony of the victim alone. *See* TEX. CODE CRIM. PROC. art. 38.07(a); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005) (noting that article 38.07 "deals with the sufficiency of evidence required to sustain a conviction for" certain sexual offenses). The State has no burden to produce any corroborating or physical evidence. *See Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.— Houston [1st Dist.] 2004) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

### *Issues II and III*

T.M., who was 29 years old at the time of trial, described a pattern of sexual abuse by Moore starting when she was four years old until she was an adult. T.M. said this pattern happened two to three times a week, always in Moore's room, and usually in the mornings when T.M.'s mother was not home. Before T.M. turned 16 years old, the type of sexual abuse included sexual touching by Moore, ejaculation by Moore on T.M., and sometimes, touching by T.M.'s hand of Moore's penis. T.M. recounted that once, however, when she was six years old, Moore attempted to penetrate her vaginally while she was

in the bathtub with her sister. However, he "split" her, causing her vagina to bleed. He put a sibling's diaper on her and told her to tell her mother that her sister's toenail cut her.

When she turned 16 years old, the abuse escalated to vaginal penetration with Moore's penis, which resulted in two terminated pregnancies. T.M. described how Moore would summon her to his room with a secret knock. T.M. also described further attempted assaults even after she married at 21 years of age and moved out of the house.

Moore contends T.M's testimony is unbelievable because there was no direct evidence or any other evidence by the State to corroborate T.M.'s claims, "almost everyone" of T.M.'s family testified that T.M. is not a truthful person, T.M. had made allegations before and recanted, and T.M. had been committed to a mental health facility, thus, the allegations were made out of a delusional state.

The jury heard T.M.'s account of her repeated sexual abuse by Moore and her acknowledgement that she recanted in the past. However, she asserted she recanted not because the accusations were not true or that she was delusional but because no one believed her and because the accusations were causing drama in her family.

Many of her family members testified that, in their opinion, T.M. was

untruthful. However, other witnesses, including family members, confirmed various aspects of T.M.'s testimony. For example, Detective Clark corroborated T.M.'s outcries going back to 1997, finding them consistent throughout in spite of the recantations. Dr. Beyer, a psychiatrist with MHMR who evaluated T.M. in 2006 and 2013 when she was sent to a mental health facility, corroborated T.M.'s outcries in his treatment notes. T.M. made contemporaneous outcries to a former high school boyfriend and his mother. The boyfriend also testified to witnessing T.M. being summoned by a special knock into Moore's room. He then heard noises indicating sexual activity coming from Moore's room after T.M. entered it. Moore confirmed that he took T.M. to a clinic to have two abortions without T.M.'s mother's knowledge. T.M.s' mother confirmed seeing T.M. in a diaper when T.M. was six years old. But, having found no injury, T.M.'s mother thought nothing more of it since both T.M. and Moore said the sister's toenail cut T.M.'s vagina.

Additionally, Dr. Beyer, Dr. Carter, the State's testifying psychologist, and Detective Clark all shared their expertise in the field of child sexual abuse, explaining delayed outcry, recantation, and mental health issues common to child sexual abuse. They each testified that T.M.'s actions and behaviors in these areas were consistent with being the victim of sexual abuse. Dr. Carter further testified that Moore's actions and behaviors were consistent with child

sexual predation.

It was the jury's duty as the sole factfinder to assess T.M.'s credibility and to resolve any conflicts in the evidence or testimony. *See Zuniga v. State*, 551 S.W.3d 729 (Tex. Crim. App. 2018). We presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The jury determines the credibility of the witnesses and may believe all, some, or none of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Accordingly, after reviewing all the evidence in the light most favorable to the jury's verdict, giving due deference to the jury's weight and credibility determinations, we conclude that, on the evidence presented, a rational trier of fact could have found the essential elements of each offense beyond a reasonable doubt.

Moore's second and third issues are overruled

### Issue IV

In his fourth issue, Moore contends the evidence is insufficient to find him guilty beyond a reasonable doubt of the offense of Prohibited Sexual Conduct under Count X of the indictment. However, the jury acquitted Moore on this offense.

Accordingly, Moore's fourth issue is overruled.

**CONCLUSION**

Having overruled each issue presented on appeal, we affirm the trial court's judgments.

_____
LEE HARRIS
Justice

OPINION DELIVERED and FILED:  July 31, 2025

Before Justice Smith,
      Justice Harris, and
      Senior Justice Davis[1]
Affirmed
Do Not Publish
CRPM



---

[1] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Texas.